UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDITH A. JOHNSON,<br><br>          Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>          Defendant. | Case No. C07-5298FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for May 2, 2008 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the Administration's final decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Judith Johnson, was born in 1939.  Plaintiff had a high school education, two years of college (Tr. 213) and past work as a secretary and an administrative assistant (Tr. 208).   Plaintiff last worked in 1995, as an Office Administrator. (Tr. 166). She stopped working because she was too tired and had difficulty getting up and going to work. (Tr. 167).   She was offered early retirement and took it. (Tr. 167).  Plaintiff alleges she is disabled and unable to work due to degenerative disc disease and bi-

1  polar disorder (Tr. 23).

2  Plaintiff filed an application for Social Security disability benefits on August 9, 1997, alleging that
3  she has been disabled under the Social Security Act since May 1, 1995. (Tr. 23). Her application was
4  denied initially and on reconsideration. (Tr. 23). On October 29, 1998, a hearing was held before
5  Administrative Law Judge David J. Delaittre. (Tr. 162-205). On March 26, 1999, ALJ Delaittre issued a
6  decision denying Ms. Johnson's disability claim. (Tr. 20-37). Ms. Johnson requested review by the
7  Appeals Council which, on June 1, 2001, denied her request for review, leaving the decision of the ALJ as
8  the final decision of the Commissioner. (Tr. 90-92). A timely Complaint was filed in Federal District
9  Court.

10  On April 15, 2002, following briefing by the parties, Magistrate Judge John L. Weinberg issued a
11  Report and Recommendation in which he recommended that the district court affirm the Commissioner's
12  final decision denying benefits.  By Order and Judgment entered June 14, 2002, U.S. District Judge
13  Franklin D. Burgess adopted the Magistrate Judge's Report and Recommendation.  Ms. Johnson filed a
14  timely Notice of Appeal. Following briefing by the parties, on October 28, 2003, the court of appeals
15  issued a memorandum affirming the District Court decision.

16  On July 24, 2002, Ms. Johnson protectively filed a new application for disability benefits, again
17  alleging that she has been disabled under the Social Security Act since May 1, 1995. (Tr. 148-50).  Her
18  application was denied initially and on reconsideration. (Tr. 93-96, 99-100). Ms. Johnson filed a timely
19  request for hearing. (Tr. 101).  A hearing was held on October 31, 2005 before Administrative Law Judge
20  Denny Allen. (Tr. 422-27).  Following the hearing, on November 25, 2005, the ALJ issued a decision
21  dismissing Ms. Johnson's request for hearing. (Tr. 41-45). Ms. Johnson requested review by the Appeals
22  Council which, on March 17, 2006, issued an order remanding Ms. Johnson's disability claim for a new
23  hearing. (Tr. 46-49).

24  Another hearing was held before Judge Allen on January 16, 2007. (Tr. 428-49).  Following the
25  hearing, on February 8, 2007, the ALJ issued a decision denying Ms. Johnson's disability claim. (Tr.
26  11-19). Ms. Johnson requested review by the Appeals Council which, on May 22, 2007, denied her
27  request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (Tr. 6-10).
28  Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as

REPORT AND RECOMMENDATION
Page - 2

amended, 42 U.S.C. § 405(g), to obtain judicial review of the administration's final decision denying plaintiff's applications for social security benefits. Plaintiff specifically contends: (1) the Jude Allen's conduct at the second hearing violated Plaintiff's right to due process of law; (2) the ALJ failed to fully and fairly develop the record; and (3) the ALJ erred by improperly applying the doctrine of *res judicata*.

## DISCUSSION

The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, this Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

The burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. *See* Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 423(d)(1)(A). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. See 42 U.S.C. §§ 423(d)(2)(A), 1382c (a)(3)(B).

A.   **THE ALJ APPROPRIATELY DEVELOPED THE RECORD AND DENIED PLAINTIFF'S CLAIMS ON THE BASIS OF RES JUDICATA**

The doctrine of *res judicata* provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action. In re Imperial Corp. of America, 92 F.3d 1503, 1506 (9th Cir.1996). "[A] final judgment on the merits of an action precludes the parties or the privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). *Res judicata* bars a later suit where the previous suit (1) involved the same "claim" as the

later suit, (2) reached a final judgment on the merits, and (3) involved the same parties or their privies. Nordhorn v. Ladish Co., Inc., 9 F.3d 1402, 1404 (9th Cir.1993).

The doctrine of *res judicata* is not rigidly applied to social security disability determinations. Fair v. Bowen, 885 F.2d 597, 600 (9th Cir.1989). The enforcement of *res judicata* in such cases "must be tempered by fairness and equity." Thompson v. Schweiker, 665 F.2d 936, 940 (9th Cir.1982). *Res judicata* principles are properly applied in the context of administrative decisions, although in such a context "the *res judicata* doctrine is not as rigid as it is with courts." Stuckey v. Weinberger, 488 F.2d 904, 911 (9th Cir.1973) (*en banc*).

Here, the Judge Allen properly applied the doctrine of *res judicata*. The final decision, denying Plaintiff's 1997 application for disability benefits, came on March 26, 1999, when ALJ Delaittre issued a decision denying Ms. Johnson's disability claim. (Tr. 20-37). The Ninth Circuit affirmed that decision in October 2003. When Plaintiff filed a new application for benefits on July 22, 2002, alleging the same onset date and based on the same medical claims (degenerative disc disease and bi-polar disorder), Judge Allen correctly denied the application based on the doctrine of *res judicata*. Judge Allen explained:

> The general issue is whether the claimant is entitled to a period of disability and Disability Insurance Benefits under Sections 216(i) and 223 of the Social Security Act. The specific issue is whether on December 31, 2000 [Plaintiff's last date insured] she was under a disability. [Omitted].
>
> Because this is a case in which there has been a prior unfavorable Administrative Law Judge decision, the issue of *res judicata* and the presumption of continuing non-disability must be addressed. *Chavez v. Brown*, 844 F.2d 691 (9th Cir. 1988); Acquiescence Ruling 97-4(9). {Footnote omitted].
>
> Upon reviewing all of the evidence of record, I conclude that the claimant has not rebutted the presumption of continuing non-disability. Therefore, she was not disabled within the meaning of the Social Security Act through December 31, 2000, the date her insured status expired.
>
> [Omitted].
>
> Judge DeLaittre found that the claimant had severe degenerative disc disease and that the degenerative disc disease did not meet or equal the severity criteria of any impairments listed in Appendix 1, Subpart P, Regulations No. 4. At the hearing, Dr. Spence testified that for the period ending December 31, 2000, considering all the evidence or record, the claimant's degenerative disc disease did not meet or equal any medical listing. I conclude that the revised mental and musculoskeletal listings do not change Judge DeLaittre's finding at Step 3 of the disability evaluation. [Footnote Omitted].
>
> At the hearing, Dr. Spence testified that there was no change whatsoever in the claimant's medical condition between March 1999 and December 2000. He noted here symptoms of lower back pain and pain in her left hip. In 1999 she complained of right arm pain and it

REPORT AND RECOMMENDATION
Page - 4

> was assumed that this was related to degenerative disc disease based on x-rays taken in 1997. Imaging studies confirmed disc protrusions at C3-4 and C4-5 and degenerative disc disease especially at C6-7 but to some extent throughout the cervical spine. This was felt to be the source of the pain. Examination findings showed tightness, particularly with rotation of the head plus mild decrease in range of motion in the neck and shoulders. Other than this the examinations did not demonstrate much in way of impairment or limitations. Dr. Spence did not detect any change in those findings.
>
> Counsel noted a cervical MRI scan dated January 28, 2000 (Exhibits AC-1 and B4F/40). His position was that this constituted a change in claimant's medical condition. However, Dr. Spence diagnosed disc disease throughout the cervical spine and with emphasis on C6-7 as existing on March 26, 1999. He testified that the overall picture had not changed at all. He opined that given the nature of the conditions seen on the MRI, they were present in March 1999 and were subsumed in the diagnosis of cervical degenerative disc disease.
>
> Counsel then suggested that a chart note by Kevin Connolly, M.D., was evidence of a change in the claimant's medical condition. The note is dated January 19, 2000 and includes an examination finding of weakness in the extensor muscles of the right arm (Exhibit B2F/3). Dr. Spence testified that this was part of the right arm pain secondary to degenerative disc disease that he identified as existing in March 1999.
>
> Prior to concluding the hearing, I again asked the medical expert, based on the record and inquire, whether there was any change in the claimant's medical condition between March 26, 1999 and December 31, 2000. He answered in the negative. I therefore find that the presumption of continued nondisability is not rebutted. [Footnote omitted].

(Tr. 15-18).

Plaintiff continues to argue, this time to the court, that she has presented new medical evidence, sufficient to preclude the ALJ's use of *res judicata* to deny her October 2002 application for social security benefits. The undersigned is not persuaded by Plaintiff's arguments. Substantial evidence supports the ALJ's decision..

When he reviewed the entire record and considered the alleged "new" medical evidence, Judge Allen called upon a medical expert, Dr. Spence, to review all of the medical evidence, including the evidence post-dating the first hearing decision (Tr. 432-48). Dr. Spence described Plaintiff's condition as of March 26, 1999 in detail, concluding that she had low back pain, left hip pain, and right arm pain, secondary to cervical degenerative disc disease (Tr. 433-34). Dr. Spence then testified that there was no change in Plaintiff's medical circumstances between March 26, 1999 and December 30, 2000, and no medical evidence of a worsening of the cervical degenerative disc disease (Tr. 434). Dr. Spence acknowledged that there was no previous magnetic resonance imaging (MRI) to compare to the January 28, 2000 MRI, and stated that review of the MRI would not lead to a conclusion that Plaintiff's medical condition had worsened (Tr. 310-11, 436-38). When asked about a January 2000 neurologic report by

REPORT AND RECOMMENDATION
Page - 5

Kevin Connolly, M.D., which reported weakness in the exterior muscles of the right arm (Tr. 259), Dr. Spence testified that it (the condition described by Dr. Connelly) was the same one they were talking about (Tr. 438). Dr. Spence testified that, in his professional opinion, as of December 31, 2000, Plaintiff's impairment did not meet or equal any medical listing (Tr. 439).

Plaintiff's attorney asked Dr. Spence what physical limitations Plaintiff had, such as exertional, postural, and manipulative (Tr. 440). Dr. Spence replied that Plaintiff had mild decrease in range of motion and sensation of cervical and parascapular tightness, and that he did not detect any change in those, better or worse (Tr. 440). Dr. Spence agreed that complaints of pain could vary for two individuals and even by the same individual before different examiners, and that weakness would vary on the part of the patient (Tr. 440-41). Dr. Spence stated, for a third time, that there was no change in Plaintiff's medical condition between March 26, 1999 and December 30, 2000, and agreed that the weakness in the right arm noted by Dr. Connelly was subsumed by the right arm pain secondary to the cervical degenerative disease, and existed as of March 1999 (Tr. 18, 433-34, 444). Finally, Dr. Spence testified that the findings in the January 2000 MRI did not just appear in a matter of a year or two – an MRI taken in 1998 would have shown essentially the same pathology, particularly since Plaintiff's symptoms had not significantly changed (Tr. 446).

Plaintiff further argues that ALJ DeLattaire did not find any limitations in the right hand, and that Dr. Connelly's report and the medical expert testimony establishes that Plaintiff had manipulative limitations subsequent to March 26, 1999. To the contrary, the evidence does not establish manipulative limitations. Plaintiff reported pain in her right arm and hand, associated with paresthesias, and some weakness of the right hand in January 2000 (Tr. 257). Dr. Connelly's examination results showed weakness in the right triceps, right wrist extensor, and right finger extensors; that rapid alternating movements could be performed well in the upper and lower extremities; and there was no atrophy or abnormal movement (Tr. 258). Judge Allen noted that Dr. Spence testified that this was part of the right arm pain that Dr. Spence had identified as existing in March 1999. Further, Dr, Connelly's results do not state or establish actual manipulative limitations (reaching, handling, fingering, feeling), only a weakness of muscles. Muscle weakness is more appropriately accounted for in the findings on exertional limitations.

Finally, the court notes that state agency reviewing physician, David Deutsch, M.D., reviewed the medical evidence in September 2003, and affirmed the Physical Residual Functional Capacity assessment completed in May 2003 (Tr. 387-91). Dr. Connelly's January 2000 neurologic examination is referenced, and the finding affirmed by Dr. Deutsch included no manipulative limitations (Tr.388-89).

In sum, Plaintiff has not demonstrated any changed circumstances sufficient to overcome the presumption of continuing non-disability or the ALJ's use of *res judicata* in this matter. Accordingly, Plaintiff has not met her burden of establishing that her condition from March 27, 1999 through December 31, 2000 has deteriorated so as to rebut the presumption of non-disability arising from the adverse finding on her first application for benefits. As a result, the ALJ's decision did not result in the "manifest injustice" of which the Ninth Circuit warned in Thompson v. Schweiker, *supra*.

### B. *THE ALJ DID NOT DENY PLAINTIFF DUE PROCESS OF LAW*

Plaintiff argues that the ALJ's conduct at the hearing violated her constitutional right to due process (Pl.'s Br. at 15). Specifically, she alleges that the ALJ refused to allow Plaintiff's attorney to fully question Dr. Spence and refused to allow Dr. Spence to answer several questions (Pl.'s Br. at 15). In addition, Plaintiff contends that the ALJ's refusal to allow Plaintiff's attorney a drink of water impeded his ability to provide effective representation at the hearing (Pl.'s Br. at 16).

"It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied." Udd v. Massanari, 245 F.3d 1096, 1099 (9th Cir. 2001), *citing* Mathews v. Eldridge, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).  A review of the hearing transcript shows that Plaintiff's counsel was not prohibited from soliciting evidence material to the issues at hand, i.e., whether there were changed circumstances sufficient to overcome the presumption of continuing non-disability.

At Ms. Johnson's second hearing, the ALJ refused to allow Ms. Johnson's attorney to pose certain questions to the Medical Expert, Dr. Spence, and the ALJ refused to allow Dr. Spence to answer certain questions. (Tr. 437, 437-38, 438-39, 447-48).  It is important to note that the threshold issue presented to Judge Allen was particularly narrow — whether on December 31, 2000, Plaintiff she was under a disability and whether she presented any legitimate new evidence to overcome giving ALJ DeLaittre's previous decision preclusive effect.  In this context, the ALJ struck a question posed by Plaintiff's

counsel about someone reviewing the medical file at two points in time, counsel rephrased his question, and asked Dr. Spence if the January 2000 MRI was a significant piece of new evidence (Tr. 437). Dr. Spence was also asked if Dr. Connelly's finding of weakness in extensor muscles of the right arm was a new objective finding (Tr. 437). The ALJ paraphrased the question, and limitations as of December 31, 2000 and in what ways was Plaintiff limited (exertional, postural, and manipulative limitations) (Tr. 439-40). Dr. Spence responded that the evidence did support limitations, and described those as a mild decrease in range of motion and sensation of cervical and parascapular tightness (Tr. 439-40). The ALJ also properly disallowed a question to Dr. Spence, as to whether he could cite any reason for disbelieving pain complaints, because credibility issues are reserved to the ALJ.  Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999) (questions of credibility and resolution of conflicts in the testimony are functions solely of the ALJ).

As discussed above and highlighted above, the ALJ comprehensively questioned the medical expert at the hearing regarding the argument that new evidence demonstrated greater medical limitations during the relevant time period.  Three times the expert explained there had been no significant change in her condition.

Finally, Plaintiff's counsel argues he was unfairly impeded in his ability to represent his client by not being allowed water.  Nonetheless, during the hearing counsel continued to question the witness, and made a lengthy argument on whether Plaintiff's condition continued to worsen (Tr. 442, 444-45). Regardless of whether a drink of water was not allowed (it's not clear that a break was requested), Plaintiff has not shown that any material questions were not asked or that any argument was not made.

The record does not establish that Plaintiff was deprived of her due process right to present evidence in the administrative process, or that the ALJ's handling of the hearing introduced a high risk of error to the disability decision-making process. *See* Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th Cir. 2001) (*citing* Gonzales v. Sullivan, 914 F.2d 1197, 1203 (9th Cir. 1990)) (notice must not be so "misleading that it introduces a high risk of error into the disability decision making process.").

## CONCLUSION

Based on the foregoing, the Court should AFFIRM the administration's decision.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10)

REPORT AND RECOMMENDATION
Page - 8

1 days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file
2 objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140
3 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for
4 consideration on **May 2, 2008**, as noted in the caption.

5      DATED this 8th day of April, 2008.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge

REPORT AND RECOMMENDATION
Page - 9